CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
September 29, 2026
LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

| | | |
|---|---|---|
| **LINDA WILLIAMS,** | ) | |
| Plaintiff, | ) | Case No. 1:25CV00001 |
| v. | ) | **OPINION AND ORDER** |
| **UNITED STATES OF AMERICA,** | ) | JUDGE JAMES P. JONES |
| Defendant. | ) | |

*Devon J. Munro, MUNRO BYRD, P.C., Roanoke, Virginia, for Plaintiff; Laura Day Taylor, Assistant United States Attorney, Roanoke, Virginia, for United States.*

On March 14, 2023, plaintiff Linda Williams slipped and fell on ice in the parking lot of a post office in West Jefferson, North Carolina. Because of the fall, on September 27, 2023, Williams filed an administrative claim, called a SF-95, under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 (FTCA), with the United States Postal Service (USPS). The claim sought $31,051.64 broken down as follows: $51.64 in medical expenses; $25,000 for pain and suffering; and $6,000 for extra costs for the house Mrs. Williams and her husband were building for themselves due to her inability to work on it.[1] The USPS denied Mrs. Williams's claim on July 10, 2024.

---

[1] In her deposition in this case, Mrs. Williams testified as to the claim for pain and suffering as follows:

Mrs. Williams, a resident of Fries, Virginia, filed the present lawsuit pursuant to the FTCA on January 3, 2025. The ad damnum clause seeks $300,000 and alleges that, as a direct and proximate result of the government's negligence, Mrs. Williams "fell and suffered serious bodily injury, aggravation and inconvenience, losses of use and enjoyment, and mental and emotional injury, resulting in necessary medical treatment, related past and future expenses and losses, and other economic losses." Compl. 4, Dkt. No. 1.

The government contends that that even if Mrs. Williams can prove negligence on behalf of the USPS that proximately caused her injury, she cannot recover more than $31,051.00 — the sum certain that Mrs. Williams requested in

---

Q How did you come up with the number $25,000?

A I just made up a number. I didn't know how much it would be. I think I might have looked something up online. I'm not real sure.

Q Right –

A I didn't have an attorney, so I didn't really know what I was doing. I was just focused on this deadline that I had to do. So at that point, that's all I knew what to do.

Pl.'s Br. Opp'n, Williams Dep. 72, Dkt. No. 34-1. Mrs. Williams testified that she had retained an attorney after she met with a neurologist and "got the diagnosis of the brain injury and realized how bad it is." *Id.* As explained hereafter, however, there is no evidence of a new diagnosis.

her administrative claim. This issue has been argued and briefed and is ripe for decision.[2]

I.

The FTCA requires that a claim "first [be] presented . . . to the appropriate Federal agency" and be "finally denied by the agency in writing" before a plaintiff may seek redress in federal court. 28 U.S.C. § 2675(a). Upon initiating a suit, a plaintiff cannot seek a sum certain exceeding that which she requested in her administrative claim unless she can prove either "newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency," or "intervening facts" that would justify the increase. § 2675(b). The parties contest whether the evidence Williams has presented falls into either of these exceptions.[3]

Mrs. Williams's counsel attributes the large discrepancy in the sum requested in her SF-95 and the sum requested in the ad damnum clause to Mrs. Williams filing the SF-95 without the benefit of a lawyer's advice and thus not knowing how to

[2] The parties jointly requested that the court decide this issue prior to trial, to facilitate possible settlement. Joint Mot. ¶ 7, Dkt. No. 14. To this end, the United States filed a Motion to Reduce Ad Damnum Clause, Dkt. No. 28, which I treated as a Motion for Summary Judgment, Order, Dkt. No. 40, allowing the plaintiff to file further materials and the United States to respond.

[3] An administrative claim may be amended at any time before the agency takes final action. 28 C.F.R. § 14.2(c). On January 12, 2024, Mrs. Williams left a voice mail with the post office saying that she needed to amend her demand, Dkt. No. 29-7, and she apparently advised the post office by letter dated April 10, 2024, that she had been diagnosed with traumatic brain injury, Dkt. No. 44. However, there is no evidence that an amended claim was made before the USPO denied it.

account for legal damages. Counsel also argues that all incident-related medical appointments Mrs. Williams attended prior to filing her SF-95 concerned acute injury care and short-term concussive symptoms, and it was only after filing the SF-95 that she began to perceive persistent symptoms and obtained specialized treatment.

The government argues that Mrs. Williams has failed to identify any new diagnoses that would constitute newly discovered evidence that was not reasonably discoverable at the time she filed her SF-95. Specifically, the government contends that the diagnosis Mrs. Williams received after filing her SF-95 simply confirmed the concussion without loss of consciousness diagnosis she received prior to filing her SF-95.

In support of her position, Mrs. Williams has filed a report of Justin Weppner, D.O., the chief of Carillon Clinic's Physical Medicine and Rehabilitation Section, and Medical Director of the Carilion Clinic Brain Injury Center. He has been a treatment provider for Mrs. Williams since July of 2024, when she was referred to his practice by her family doctor, Arthur Pemberton, M.D. Dr. Weppner is board certified in Brain Injury Medicine and has extensive experience in the care of patients with traumatic brain injury.

In his report, Dr. Weppner extensively reviews Mrs. Williams' symptoms and treatment history following her fall.

Two days after her fall, on March 16, 2023, Mrs. Williams called Dr. Pemberton's office and advised that she was suffering "burry vision," speech difficulties, and "not functioning correctly." Mem. Supp. Mot. Reduce Ad Damnum Clause, Carilion Clinic Family & Internal Medicine Rs., Dkt. No. 29-4, at 203. She was told to go to the emergency room. She obeyed and was diagnosed with a concussion without loss of consciousness and was released for rest and avoidance of driving. She saw Dr. Pemberton a few days later on March 21 and reported continuing problems, although she felt better. Dr. Pemberton diagnosed her with post-concussive syndrome (primary) as well as closed head injury with concussion, without loss of consciousness. She returned to Dr. Pemberton for an annual wellness visit on June 28, 2023, but there was no discussion of any symptoms attributed to her fall, although Mrs. Williams now says that she was still having headaches and mentioned it to Dr. Pemberton.[4]

The medical records indicate no further medical consultations regarding the fall until February of 2024, after her son urged her to seek help for her persistent symptoms. Dr. Pemberton first referred her to physical therapy and then on July 1, 2024, he referred her to Dr. Weppner. Based on his consideration of her case, Dr.

[4] Dr. Weppner reports that Mrs. Williams has a pre-fall history of headaches and vertigo, but he is of the opinion that her present symptoms are from the fall, rather than recurrence of a "primary headache or vestibular disorder alone." Expert Witness Report 6, Dkt. No. 44.

Weppner diagnoses Mrs. Williams with "a mild traumatic brain injury with cognitive complaints and visual disturbance, and persistent post-concussive symptoms." Expert Witness Report 7, Dkt. No. 44. He opines that "the degree of permanency is still to be determined." *Id*. at 8.

II.

The government relies upon the Fourth Circuit's opinion in *Kielwien v. United States*, 540 F.2d 676 (4th Cir. 1976). There, the plaintiff filed suit seeking damages in an amount exceeding the sum she requested in her administrative claim, alleging that she had only learned about the extent of her injuries through medical consultations that occurred months after filing the claim. The district court entered judgment in her favor under the intervening facts exception to § 2675(b). The Fourth Circuit reversed, finding that the diagnoses the plaintiff received after filing her administrative claim were the same as the ones she received from other physicians prior to filing the claim. The "diagnoses and advice were thus cumulative and confirmatory of what plaintiff had largely already been told," meaning the diagnoses the plaintiff received after filing her administrative claim "could not be considered an intervening fact" under § 2675(b). *Kielwien*, 540 F.2d at 680 (internal quotation marks omitted).

On the other hand, in *Spivey v. United States*, 912 F.2d 80 (4th Cir. 1990), the Fourth Circuit found that the medical records presented showed that the plaintiff

only developed symptoms of tardive dyskinesia (a movement disorder) seven months after filing her administrative claim. While the court acknowledged that tardive dyskinesia is a known potential side effect of medications the plaintiff began taking prior to filing her administrative claim, the plaintiff had not exhibited any symptoms prior to filing the claim. Accordingly, the court found that the occurrence of tardive dyskinesia was "newly discovered" evidence under § 2675(b). *Id.* at 85–86.

As the government argues, if a FTCA plaintiff is relying on a new diagnosis or prognosis to justify a demand higher than the SF-95, the plaintiff must show that the diagnosis or prognosis "could not have been discovered" during the claim period. *Id.* at 85. In other words, "the new diagnosis must have been unforeseeable or unexpected at the time the plaintiff filed her administrative claim." *Anderson v. United States*, No. 4:12CV176, 2013 WL 12183631, at 2 (E.D. Va. July 12, 2013) (citing *Spivey*). This foreseeability standard is objective, not subjective. *Spivey*, 912 F.2d at 83–84. Sovereign immunity is construed strictly in favor of the sovereign. *Robb v. United States*, 80 F.3d 884, 887 (4th Cir. 1996).

The burden is upon Mrs. Williams to show by a preponderance of the evidece either newly discovered evidence not reasonably discoverable at the time of presenting the claim or intervening facts that would justify the increase. Since the burden lies upon the plaintiff on this issue, it is also her burden to show why

summary judgment should not be granted to the government as to the issue of damages.

III.

Dr. Weppner's Expert Report does not support Mrs. Williams' burden of proof. He does try to explain why she failed to recognize that her symptoms might be more persistent. He hypothesizes that (1) the symptoms are "intermittent, and their onset and severity will wax and wane depending on stimuli"; (2) patients often cope with such symptoms on their own without seeking medical help until their family or friends "vocalize their concern"; and (3) Mrs. Willams did not promptly see a specialist, rather than depending solely on her family doctor. Expert Witness Report 8, Dkt. No. 44.

Dr. Weppner has not diagnosed a new malady or symptoms, although he does introduce the term "traumatic brain injury."[5] Expert Report 5, Dkt. No. 44. As the government points out, her concussion from the fall was a type of traumatic brain injury. In fact, Mrs. Williams was instructed before leaving the ER after the fall that "[a] concussion occurs when there is a blow to the head or the body, with enough force to shake the brain and disrupt how the brain functions" and "it is difficult to

---

[5] 158 Eric S. Sussman et als., *Handbook of Clinical Neurology*, Ch. 3, Mild traumatic brain injury and concussion: terminology and classification 21 (2018) available at https://www.sciencedirect.com/science/chapter/handbook/abs/pii/B9780444639547000033?via%3Dihub (noting that "the terms concussion and mTBI [mild traumatic brain injury] are often used interchangeably in both clinical and research settigs").

predict when your symptoms will resolve." Carilion Clinic Family & Internal Medicine Rs. LW000336, Dkt. No. 29-5. The possible symptoms predicted when she left the ER are same symptoms that she presented to Dr. Weppner months later.

For these reasons, it is **ORDERED** that the government's Motion, Dkt. No. 28, is GRANTED, and the plaintiff may not recover in this action more than the amount stated on her SF-95. The case will be reset for trial.

ENTER: September 29, 2026

/s/ JAMES P. JONES
Senior United States District Judge